IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JACQUELINE TAYLOR, LISA BROOKS, MICHELE COWAN, TUANA HENRY, MATTIE MCCORKLE, RENEE WILSON, and PEOPLE'S WATER BOARD COALITION, on behalf of themselves and all other similarly situated, | Case No. 2:20-cv-11860<br><br>Hon. Denise Page Hood<br><br>Mag. Anthony P. Patti |
| Plaintiffs, | |
| v. | |
| CITY OF DETROIT, a Municipal Corporation, through the Detroit Water and Sewerage Department, its Agent; GOVERNOR GRETCHEN WHITMER, in her official capacity; MAYOR MICHAEL DUGGAN, in his official capacity; and GARY BROWN, in his official capacity, | |
| Defendants. | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

### The Lifeline Program's Potential for Ending Water Shutoffs Has Not Yet Been Realized, Threatening Thousands with Irreparable Harm.

In opposing Plaintiffs' motion for preliminary injunctive relief, City Defendants tout the Lifeline program as the solution to any problems posed by ending the moratorium on water shutoffs. But by the City Defendants' own admission, there are thousands of individuals who are not yet eligible for whatever protection from water shutoffs the Lifeline program purports to provide.

Specifically, City Defendants claim they have received 14,000 applications for the Lifeline program, and these applicants are presumably immune from shutoffs. At the same time, City Defendants have indicated elsewhere that there are at least 86,000 additional households[1] that have not yet applied, even after what City Defendants present as exhaustive efforts at outreach. What of these thousands of persons who are susceptible to shutoffs?

A. *The Lifeline Program is Administratively Unstable.*

City Defendants suggest that achieving immunity from shutoffs is as easy as making a phone call and requesting enrollment. But is it really? City Defendants make much of the fact that the three named Plaintiffs who submitted affidavits in support of the pending motion are now enrolled in the Lifeline program and enjoying

---

[1] See https://www.detroitnews.com/story/news/local/detroit-city/2022/06/28/detroit-announces-first-income-based-water-affordability-plan/7759395001/, in which Defendant Duggan acknowledges that 100,000 households in Detroit qualify for Lifeline.

1

its benefits. But their affidavits and the challenges these documents describe about the obstacles to enrollment cannot be ignored. Are City Defendants suggesting that they are prepared to make aggressive efforts to enroll the thousands of persons who have not yet even applied? If so, why has that not yet occurred; and if it can occur in short order, why not wait to resume water shutoffs until all eligible persons have applied for enrollment? The answer is that the infrastructure, administration, finances, and other factors essential to the success of the program have not been stabilized.

It is telling that by City Defendants' own admission, they have received 14,000 applications, but only 8,525 of those applicants are fully enrolled. It is logical to infer that immediate enrollment is preferred, but such has not been accomplished because of administrative factors; likely the same types of administrative challenges that accounted for the circumstances described in Plaintiffs' affidavits, such as lengthy waiting times on phone lines.

It is also important to recognize that City Defendants' repeated claim that "the moratorium continues" for those who apply for enrollment in Lifeline is simply not true. Section 7.2 of the "Pilot Lifeline Plan Administration" policy [2] provides that those who fail to make payments can be expelled from the program and

---

[2] "Exhibit 2" appended to Exhibit A (Gary Brown's Affidavit) of City Defendants' response

"[c]ollections will proceed with usual process for collection of arrearages pursuant to DWSD policy." A moratorium presumes there will be no shutoffs under any circumstances. If even enrollees in the program face the prospect of shutoffs as a response to non-payment, effectively the program creates no change in the collections process.

    B. *The Potential Harm to Plaintiffs is Not Only Irreparable, but also Potentially Fatal.*

Notwithstanding City Defendants' arguments to the contrary, irreparable harm is caused to those who are deprived of water. Water is literally essential to life. If persons deprived of water do not die from the inability to hydrate their bodies, they may ultimately die from Covid-19, water-borne disease, or other problems described at length in Plaintiffs' other filings. Consequently, Plaintiffs' motion for a preliminary injunction cannot be reduced to a simple business decision or an assessment of lost revenue. There are human lives at stake, and City Defendants are not entitled to regard any person as expendable even if that individual does not enroll in the Lifeline program. That would be true if even one life were at issue, but there are yet thousands of individuals who are not yet eligible for whatever protection from water shutoffs the Lifeline program purports to provide.

Plaintiffs do not minimize the fiscal concerns identified by City Defendants, but Plaintiffs do challenge vigorously the suggestion that those concerns are appropriately addressed by the resumption of water shutoffs – particularly when the

3

supposed antidote to the harms that result from shutoffs is a program that is unproven and not yet tested by time and experience.

### C. *The Circumstances of the Named Plaintiffs Remain Representative of those of the Putative Class.*

The City Defendants' eleventh-hour enrollment of the named Plaintiffs in the Lifeline program neither renders their circumstances irrelevant to the pending motion for a preliminary injunction nor does it disqualify them as representatives of a class that remains significantly unaffected by whatever protection the Lifeline program purportedly provides.

> The Supreme Court has explained that a case may become moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," sometimes referred to as "the personal stake requirement." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 410 (1980) (internal quotation marks omitted). When class actions are involved, however, the Supreme Court has explained that "the Art. III mootness doctrine" is "flexible." *Id*. at 400. And unlike plaintiffs proceeding individually, "[a] class representative has two legally cognizable interests: 'One is the claim on the merits; the other is the claim that he is entitled to represent a class.' " *Richards v. Delta Air Lines, Inc.,* 453 F.3d 525, 528 (D.C. Cir. 2006) (quoting *Geraghty*, 445 U.S. at 402).

*Wilson v. Gordon*, 822 F.3d 934, 941-942 (6th Cir. 2016)

Additionally, even when (as in the case at bar) a class has not yet been certified, the Supreme Court has carved out an exception to the general rule that moot claims of an uncertified class may result in dismissal. This exception is recognized when a named plaintiff's injuries are remedied before the court has the

4

opportunity to certify the class, and such injuries are likely to affect other members of the class. "Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980). These "inherently transitory" injuries can be the basis for preservation of class claims that might otherwise be moot. *Gerstein v. Pugh,* 420 U.S. 103, 111 n. 11 (1975). This exception has been widely affirmed and employed. *Wilson v. Gordon*, 822 F.3d 934, 941-942 (6th Cir. 2016); *County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991); *Swisher v. Brady*, 438 U.S. 204, 213 n. 11 (1978); *Ball v. Wagers*, 795 F.2d 579, 581 (6th Cir. 1986); *Olson v. Brown*, 594 F. 3d 577 (7th Cir. 2010).

The inherently transitory exception applies in the instant case. Water is a vital necessity, and Plaintiffs lack the option of forgoing the relief available under the Lifeline plan for the purpose of preserving their similar situation to thousands of other class members who are not equally blessed. The fact that City Defendants have attempted to "pick off" the named Plaintiffs before class certification is granted does not mean the claims of the class of people subject to shutoffs will become moot.[3]

---

[3] Exhibit 10 of Gary Brown's Affidavit (Exhibit A of Defendants' Response) shows that the three named Plaintiffs who filed declarations in support of the pending motion were enrolled in the Lifeline program as the end of the voluntary moratorium neared. Two of these Plaintiffs (Tuana Henry and Jacqueline Taylor) were enrolled within days after the pending motion was filed on December 12, 2022.

5

The Sixth Circuit's recognition of an exception to mootness[4] when defendants pick off class representatives is grounded in the U.S. Supreme Court's observation that:

> Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement. It would be in the interests of a class-action defendant to forestall any appeal of denial of class certification if that could be accomplished by tendering the individual damages claimed by the named plaintiffs.

*Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 339 (1980).

### D. *The Moratorium Must Continue While Issues in the Litigation Remain Unresolved.*

Plaintiffs have not passed final judgment on the Lifeline program. In fact, Plaintiffs are encouraged by City Defendants' willingness to adopt an affordability program. However, this particular program is not yet fully established, confirmed and consolidated, and as such it cannot yet be regarded as a panacea for the harms that flow from mass water shutoffs.

Plaintiffs have an interest in contributing to the development and success of an affordability plan for Detroit, but they are hamstrung by the circumstances of this case. Soon after the Lifeline program was announced, Plaintiffs proposed that they

---

[4] See: *Wilson v. Gordon*, 822 F.3d 934, 947 (6th Cir. 2016); *Blankenship v. Sec. of HEW*, 587 F.2d 329, 331-33 (6th Cir. 1978); *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir. 2005).

confer with City Defendants about whether it might potentially lead to settlement. However, Defendants' counsel sent an email on June 30, 2022 that stated: "Mr. Fancher - The City does not wish to engage with you and your clients on these issues." Further, the Plaintiffs' motion for mandatory facilitated mediation was denied. Left only with the option of litigating the issues in the lawsuit, Plaintiffs are unable to move forward because of motions to dismiss that have not yet been resolved.

## Conclusion

Plaintiffs ask only that while they wait for circumstances to allow for movement of the case in one direction or another, that the court preserve the status quo by granting their motion for a preliminary injunction of water shutoffs.

Respectfully submitted,

By: /s/ Mark P. Fancher
Mark P. Fancher (P56223)
Daniel S. Korobkin (P72842)
Bonsitu Kitaba-Gaviglio (P78822)
**AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN**
2966 Woodward Avenue
Detroit, Michigan 48201
Tel.: (313) 578-6800
mfancher@aclumich.org
dkorobkin@aclumich.org
bkitaba@aclumich.org

7

**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**
Jason Bailey
Santino Coleman
700 14th Street NW, Suite 600
Washington, DC 20005
Tel.: (202) 682-1300
jbailey@naacpldf.org
scoleman@naacpldf.org

**EDWARDS & JENNINGS, P.C.**
Alice B. Jennings (P29064)
Cadillac Tower Building
65 Cadillac Square, Suite 2710
Detroit, Michigan 48226
Tel.: (313) 961-5000
ajennings@edwardsjennings.com

**MICHIGAN POVERTY LAW PROGRAM**
Lorray S. C. Brown (P60753)
15 South Washington Street, Suite 202
Ypsilanti, Michigan 48197
Tel.: (734) 998-6100 ext. 613
Fax.: (734) 998-9125
lorrayb@mplp.org

**THORNBLADH LEGAL GROUP PLLC**
Kurt Thornbladh (P25858)
7301 Schaefer
Dearborn, Michigan 48126
Tel: (313) 943 2678
kthornbladh@gmail.com

**MELISSA Z. EL, P.C.**
Melissa Z. El Johnson (P29865)
2785 East Grand Blvd.
Detroit MI 48211
Tel.: (313) 963-1049
Fax: (313) 963-3342
eljohnsonlaw@gmail.com

*Attorneys for Plaintiffs and the Putative Classes*

Date:  January 13, 2023